IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. 5:18-cr-00472 |
| Plaintiff, | ) | |
| | ) | Judge Dan Aaron Polster |
| v. | ) | |
| | ) | OPINION AND ORDER |
| JUSEAN FOSTER, | ) | |
| | ) | |
| Defendant. | ) | |

Before the Court is Defendant Jusean Foster's ("Foster") motion for sentence reduction under 18 U.S.C. § 3582(c)(1)(A). ECF Doc. 73. The government opposes Foster's motion. ECF Doc. 79. For the following reasons, the Court DENIES Foster's motion for sentence reduction.

Background and Procedural History

In August 2018, a federal grand jury charged Foster with one count of possession with the intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(viii)). ECF Doc. 1. In December 2018, Foster pleaded guilty to the sole count of the indictment without a plea agreement. ECF Minutes of Proceedings, 12/10/2018. In May 2019, the Court sentenced Foster to 121 months custody, four years supervised release, and a $100.00 special assessment. ECF Doc. 48. Approximately one week later, Foster filed a notice of appeal to the Sixth Circuit Court of Appeals. ECF Doc. 50. In October 2020, the Sixth Circuit affirmed the Court's judgment and Foster's below-guideline sentence of 121 months of imprisonment. ECF Doc. 64; *United States v. Foster*, 832 F. App'x 401 (6th Cir. 2020). Foster is presently housed at Federal Correctional Institution (FCI) Cumberland, and his projected release date is

May 10, 2027.[1]

In August 2020, Foster filed a *pro se* motion for reduction of sentence under 18 U.S.C. § 3582(c)(1)(A)(i).  ECF Doc. 62.  Three months later, in November 2020, Foster filed a second motion for compassionate release through counsel.  ECF Doc. 66.  In December 2020, the Court denied both of Foster's compassionate release motions.  ECF Doc. 68.  In June 2023, Foster filed a *pro* se motion for sentence reduction.  ECF Doc. 69.  The Court construed Foster's motion as a request to reduce his sentence under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018.  ECF Non-Doc. Order, 6/5/2023.  The Court *sua sponte* denied without prejudice Defendant's motion for failure to satisfy the exhaustion requirement under 18 U.S.C. § 3582(c)(1)(A).  *Id.*

In January 2024, Foster requested that the Court appoint him defense counsel regarding his eligibility for a sentence reduction under Amendment 821.  ECF Doc. 70.  The Court did so, and defense counsel filed a notice of no supplement.  ECF Non-Doc. Order, 1/5/2024; ECF Doc. 71.  In February 2024, the Court found that Foster was not eligible for a sentence reduction under Amendment 821 because he was neither under a criminal justice sentence at the time of the offenses nor a "zero-point offender."  ECF Order, 2/7/2024.  Foster had ten criminal history points when he committed the instant drug offense.  *Id.*

Turning to the present motion, on April 18, 2024, Foster filed another *pro se* motion to reduce sentence under Amendment 821.  ECF Doc. 73.  The Court construed Foster's motion as a motion for compassionate release under the First Step Act and appointed defense counsel to review and/or supplement his motion.  ECF Order, 4/19/2024.  On June 13, 2024, defense counsel filed a supplement to Foster's original motion.  ECF Doc. 77.  The government filed its

---

[1] Federal Bureau of Prisons locator, *https://www.bop.gov/inmateloc//* (last accessed 7/23/2024).

response in opposition on July 12, 2024. ECF Doc. 79. Foster filed his reply on August 8, 2024. ECF Doc. 81.

Foster contends that his extraordinary and compelling circumstances merit a sentence reduction and that the § 3553(a) factors favor his release. ECF Doc. 77, PageID# 522. Specifically, Foster points to: (1) his family circumstances and U.S. Sentencing Guidelines § 1B1.13(b)(3); (2) his rehabilitation efforts; (3) the fact that FCI Cumberland will not implement his First Step Act credits; and (4) Foster's "significant release plan" to gain "custody of his 14-year-old son, who is currently in foster care." *Id.* The government argues that the Court should deny the motion because Foster failed to show that his child's temporary placement in foster care constitutes extraordinary and compelling circumstances that warrant a sentence reduction, and the § 3553(a) factors do not support his release. ECF Doc. 79, PageID# 536.

Standard

Under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, a court may reduce an incarcerated person's sentence in extraordinary and compelling circumstances. *United States v. Jones*, 980 F.3d 1098, 1100 (6th Cir. 2020). An incarcerated person must satisfy the exhaustion requirements in § 3582(c)(1)(A) prior to filing. *See United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020). Before granting a sentence modification under § 3582(c)(1)(A)(i), this Court must find: (1) extraordinary and compelling reasons warrant a sentence modification; and (2) the reduction is appropriate considering the 18 U.S.C. § 3553(a) sentencing factors. *United States v. Mukunda Dev Mukherjee*, No. 22-1627, 2023 U.S. App. LEXIS 10058, at *3 (6th Cir. Apr. 25, 2023) (citing *United States v. Traylor*, 16 F.4th 485, 487 (6th Cir. 2021)). Additionally, the Court considers in its analysis the newly enacted policy statement in U.S.S.G. § 1B1.13. *See United States v. Jarvis*, 999 F.3d 442, 446 (6th Cir. 2021) (noting that a court may look to

§ 1B1.13 for guidance when determining whether a defendant has established extraordinary and compelling reasons for release). Finally, Foster bears the burden of proof to show he is eligible for a sentence reduction. *United States v. Young*, 2022 U.S. Dist. LEXIS 191942, at *2 (N.D. Ohio Oct. 20, 2022).

Analysis

As a preliminary matter, Foster exhausted his administrative remedies. Foster submitted a compassionate release request to the Warden to care for his son due to no other family members being able to do so. ECF Doc. 73-1, PageID# 506-07. The Warden denied the request on February 9, 2024, and denied Foster's second related request on March 11, 2024. *Id.* at PageID# 506-07, 510-11. Accordingly, Foster exhausted his administrative remedies.

For the following reasons, the Court denies Foster's motion for compassionate release. First, Foster has not proven that he would be the only available caregiver for his son or that he would be considered by a court as a suitable caregiver. Under § 1B1.13(b)(3)(A), Foster must establish that "[t]he death or incapacitation of the caregiver of the defendant's minor child" constitutes extraordinary and compelling reasons for relief. U.S.S.G. § 1B1.13(b)(3)(A). The Bureau of Prisons' Program Statement 5050.50, dated January 17, 2019, defines "incapacitation" to mean that "the family member caregiver suffered a severe injury (e.g., auto accident) or suffers from a severe illness (e.g., cancer) that renders the caregiver incapable of caring for the child." *United States v. Martin*, 2022 U.S. Dist. LEXIS 132876, at *4 n.18 (N.D. Ohio July 26, 2022) (quoting Federal Bureau of Prisons, U.S. Dep't of Just., Bureau of Prisons, No. 5050.50, Program Statement 7-9 (2019)).[2] District Courts "also consider whether the need for a caretaker is so dire that the inmate is the only feasible option and [serves] the best interests of the child."

---

[2] *See* https://www.bop.gov/policy/progstat/5050_050_EN.pdf.

4

*United States v. Hunter*, 2021 U.S. Dist. LEXIS 203781, at *8 (S.D. Ohio Oct. 22, 2021) (citations omitted).

Under § 1B1.13(b)(3)(D), Foster must establish that "circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member" where "the defendant would be the only available caregiver for such family member or individual." U.S.S.G. § 1B1.13(b)(3)(D). The government concedes—and the Court concurs—that Foster's minor son qualifies as an "immediate family member" under §1B1.13(b)(3)(D). *Id.*; ECF Doc. 79, PageID# 541-42.

In January 2024, the Stark County Job and Family Services ("SCJFS") removed C.A. and his siblings from their mother's care and custody due to allegations of neglect stemming from her suicidial ideations on social media, drug use, and her refusal to cooperate with SCJFS. ECF Doc. 73-1, PageID# 494-96, 500.

Establishing that C.A.'s caregiver is incapacitated is a "heavy burden." *U.S. v. Hunter*, 2021 U.S. Dist. LEXIS 203781, at *8. Some District Courts have deemed caregivers "incapacitated" for purposes of §1B1.13(b)(3)(A) when they are incapable of caring for themselves or others, resulting in the minor child's placement in foster care. *See e.g. United States v. Pearson*, 2022 U.S. Dist. LEXIS 188468, at *1-*3 (E.D. Mich. Oct. 14, 2022) (finding mother of minor child "incapacitated" due to drug use, resulting in the child's placement in foster care); *United States v. Rodriguez*, 2020 U.S. Dist. LEXIS 154588, at *7 (W.D. Va. Aug. 25, 2020) ("Here, the caregiver of [defendant's] minor children is incapacitated such that his children are currently in foster care.").

Other courts have rejected the claim that a caregiver is incapacitated simply because a child is placed in foster care. *See e.g. United States v. Altiery*, 2021 U.S. Dist. LEXIS 223059, at

*15 (E.D. Tenn. Nov. 18, 2021) (finding no incapacitation or extraordinary and compelling circumstances where defendant's minor daughter's caregiver was imprisoned and defendant feared that his daughter was placed in foster care); *United States v. Montgomery*, 2020 U.S. Dist. LEXIS 206132, at *3 (E.D. Ky. Nov. 4, 2020) (rejecting defendant's claim that child's caregiver is incapacitated following the child's placement in temporary foster care due to mother's physical abuse, where the court found no evidence that child's mother or her foster parents suffered a severe injury or severe illness).

Here, C.A.'s caregiver has a documented history of drug use and mental health challenges that have resulted in prior substantiated incidents of neglect and caused her to lose custody of her children. ECF Doc. 73-1, PageID# 495-96. The two and a half page Stark County amended complaint details the significant struggles that C.A.'s mother has experienced in recent years regarding her sobriety and providing a stable home for C.A. and his siblings. *Id.* at PageID# 494-96. Specifically, it notes that a "caseworker has worked with Mother on three other occasions within the past year. Concerns included Mother's unstable mental health, physical abuse of the children, and domestic violence between Mother and father of the youngest child." *Id.* at PageID# 495-96. The Stark County Court of Common Pleas, Juvenile Division, Judgement Entry mirrors the concerns raised in the amended complaint and notes that C.A.'s caregiver is staying at Deliverance House, which is a residential treatment facility for adult women battling drug addiction. *Id.* at PageID# 500.[3] In sum, the drug addiction and mental

---

[3] "Mother's counselor also reported concerns of safety for the children due to mother's mental health. Mother is currently in Deliverance House. Previous concerns in the prior Agency involvement with the family involved mother's mental health, abuse of the children, and domestic violence." ECF Doc. 73-1, PageID# 500.

"Deliverance House is a residential treatment facility for adult women, providing inpatient treatment for an alcohol, benzodiazepine, cocaine, methamphetamine, opiate or other prescription drug addiction. Deliverance House is a safe place to learn to live without alcohol or other drugs and develop skills needed to maintain recovery. We offer individual and group counseling, educational presentations, vocational assistance and guest speakers." *https://www.commquest.org/residential-care/*.

health challenges that C.A.'s caregiver faces are so severe and dangerous, they are tantamount to "incapacitation" because they prevent her from caring for her children and herself. Furthermore, the Stark County Magistrate Judge deemed the removal of C.A. and his siblings as "necessary to prevent immediate or threatened physical or emotional harm." *Id.* Therefore, Foster has satisfied the first prong under §1B1.13(b)(3)(A) and proven that C.A.'s caregiver is presently incapacitated.

Moving to the second prong, Foster must prove that he would be the only available and suitable caregiver for his son. Foster lists three family relatives—including his mother in Ravenna, Ohio; his sister in McDonough, Georgia; and his brother, in Northeast Ohio—who are unable to step-in as C.A.'s caregiver. In January 2024, C.A. was placed in the temporary custody of SCJFS. *Id.* at PageID# 501. The Stark County Court of Common Pleas, Juvenile Division, Order of Magistrate—dated January 29, 2024—noted that SCJFS "attempted kinship placement but, due to issues, the children [were] placed in foster care. The Agency will continue to look into family members." *Id.* at PageID# 500-01.

The most recent evidence before the Court pertaining to C.A.'s custody is approximately seven months old. Foster has not attached any court records showing what occurred after that initial complaint and temporary order, or what is expected to happen next in the custody case. Similarly, there is no evidence before the Court that SCJFS seeks to terminate Foster's parental rights of C.A. *Id.* at PageID# 493-503. Presently, it is unclear to the Court whether C.A. remains in foster care, whether SCJFS has successfully located any family members with whom to place C.A.; or whether kinship placement is still a viable option. Therefore, Foster has failed to demonstrate that he is the only available and suitable caregiver for his son.

Even if Foster had proved that he was the only available caregiver for his son, his

7

chances of obtaining physical and legal custody of C.A. are speculative. As detailed in Foster's supplemental brief, the steps required to obtain custody of his son are numerous, "strenuous," and will likely take over a year to complete following Foster's release from prison. ECF Doc. 77, PageID# 526. They include a parenting evaluation with psychologists and social workers; mental health screening; adequate housing; and a demonstration that Foster can care for C.A. and meet his needs. *Id.* Additionally, Foster must be able to financially support C.A. Presently, Foster's assertions of his financial ability remain unsubstantiated.

Considering Foster's long-standing criminal history, the fact that Foster has spent the past five years in prison and away from his son, and that he has not been in regular contact with his son—at this juncture, the Court finds that Foster's intention of becoming "the potential caretaker of his son is merely theoretical." *United States v. Sprouse*, 2021 U.S. Dist. LEXIS 157396, at *4 (N.D. Ohio Aug. 20, 2021) (Polster, J.). Additionally, it is not at all clear that a court would grant Foster custody of C.A. due to his prior record of serious felony convictions, mental health challenges, and drug abuse.

Finally, addressing Foster's remaining two arguments—his rehabilitation efforts and FCI Cumberland's calculation of his earned time credits—both are insufficient to constitute extraordinary and compelling circumstances. Foster's commitment to his sobriety, steady employment, post-release plan, and self-reflection are commendable. Even so, as the following paragraph details, the § 3553(a) factors weigh against Foster's early release. Similarly, Foster's argument that FCI Cumberland has not provided him with "a proper release method and credit for the year that he has dutifully earned" under the First Step Act does not constitute extraordinary and compelling circumstances. ECF Doc. 77, PageID# 534. Foster's argument appears to be moot because—as he states in his reply brief—once he reaches a pattern risk score

8

of low or minimum (as opposed to his current score of medium), then FCI Cumberland will update his projected release date to reflect his earned time credits. ECF Doc. 81, PageID# 553.

Even if extraordinary and compelling reasons existed, the § 3553(a) factors weigh against Foster's early release. The Court weighed these factors in 2019 when it sentenced Foster to a below-guideline sentence of 121 months imprisonment. And the Court again weighed these factors in 2020, when it denied Foster's motion for compassionate release. ECF Doc. 68. The Court's reasoning at sentencing remains true today:

> You have a long criminal history, [], you have two serious fairly recent ones for the kidnapping and whether it was formally drug trafficking or giving someone drugs which caused him or her harm, along with having a gun, [] it's serious and it involves drugs and weapons. And, then, barely a year later, you've got the same thing. And you were trafficking poison into the community. Pure and simple. Ruining lives with people taking that methamphetamine, and just a year after you came out of prison for dealing drugs, [] you had a gun. So, I have to give you a prison sentence that's substantially longer than the ones you've received. The guideline range is 140 months. I find that that is a little longer than necessary and I'm going to vary downward two levels.

ECF Doc. 68, PageID# 470 (citing ECF Doc. 57). Therefore, the § 3553(a) factors weigh against Foster's early release.

## Conclusion

For the foregoing reasons, the Court <u>DENIES</u> Foster's motion for compassionate release.

IT IS SO ORDERED.

Date: August 8, 2024

*/s/ Dan Aaron Polster*
Dan Aaron Polster
United States District Judge

9